## Case No. 12,982.

### In re SMITH.

[1 McA. Pat. Cas. 255.]

Circuit Court, District of Columbia. May, 1853.

PATENTS — PATENTABLE INVENTION — ANALOGOUS USE — COMBINATIONS — ANTICIPATION — LETTER-FILES.

[1. A mere analogous use is not patentable; but where a new or improved manufacture is produced by new contrivances, combinations, or arrangements, a new principle may be constituted, and the application or practice of old things produce a new result. The usual test is whether the production of the article is as good in quality at a cheaper rate, or better in quality at the same rate, or with both these consequences partially combined. The fact that a combination appears to be simple, and the invention not very great, is not a sufficient objection, if the invention be not frivolous and foolish.]

[2. A letter-file, consisting of the combination of a series of narrow leaves bound in the form

of a book with larger covers, the leaves being coated on one side with adhesive material before leaving the maker's hands. is not anticipated by the well-known device of fastening letters to marginal leaves with wafers, paste, gum, etc.. or by the known practice of preparing adhesive paper so that it may be always ready for use by merely wetting the surface.]

[This was an appeal by Hamilton L. Smith from the refusal of the commissioner of patents to grant him a patent for an alleged invention relating to letter-files.]

The application under consideration in this case afterwards issued as patent No. 9,776, June 7th, 1853.

P. H. Watson, for appellant.

MORSELL, Circuit Judge. On the 23d of November, 1850, the appellant made his application for letters-patent for an improvement in paper or letter-files, with his specification, drawing, &c. This specification was amended as now presented in the form required by law. It states that he had invented a new and useful article of manufacture, to wit, a paper-file, giving a description thereof, in which he states that his letter-file consists of a series of narrow leaves which may be numbered and are bound together in the form of a book. The outer margins of the narrow leaves are coated on one side with a glutinous or adhesive preparation, common glue, or a solution of gum arabic, for example, in such manner that by simply moistening the glue and applying the margins of letters thereto they are secured permanently to the leaves in the order in which they have been respectively applied. As the boards or sides of the book are of sufficient size to cover ordinary letters when unfolded, th-. latter, when filed, are protected from inj ry, and can be conveniently referred to as the pages of a book. He states, also, that he had bound up a blank index with prepared leaves.

The argument before the commissioner was, in substance, that he merely claimed the exclusive right to manufacture and sell files with prepared adhesive leaves, which he contended was a new and useful discovery in the connection as stated in the specification, upon the ground that the paste or adhesive matter could be applied to the leaves before the files had left the hands of the manufacturer much more cheaply and conveniently than it could be applied while the files were in use; and, by such means, those who should use the file would be saved both cost and trouble in the preparation of the *leaves, and in addition would be enabled to* put up letters with far greater facility than they could be put up in any other file heretofore known; that Smith had, therefore, produced a new article of trade and an improvement upon all others, enabling the user to file letters at less cost and with greater facility and convenience than could be done before. The commissioner, after having examined into and considered the subject of the application, refused to grant the patent, and rejected said application upon the ground that the letter-folder was found and admitted to be old, with the exception of the adhesive preparation upon the leaf margins; and this preparation was also admitted to be old, and used in a similar manner for other purposes. The appellant having stated to the commissioner that he was under a misapprehension as to the extent of his admissions, the commissioner, in a letter of the 19th of February, 1851, to said Smith, says: "It has not at any time been admitted or asserted that a letter-file with 'prepared adhesive leaves' has been known before, and the official letter of yesterday (containing that part of the report) will not admit of that construction." And from another part of the commissioner's report contained in his letter of July 16th, 1851, it appears that the analogous use alluded to by him is thus stated: "The letters have usually been attached to the marginal leaves of such letterfolders by the common and well-known devices of stitching and fastening with wafers, paste, gum, &c. It is also an old and well-known device to prepare adhesive paper so that the paper may always be ready for use by merely wetting its surface, &c. The commissioner concludes that it is a clear case of the substitution of one well-known mode of attachment in a letter-folder for another, and as such unpatentable."

The reasons of appeal to which the report is intended to be an answer are, substantially, first, that the references given by the office for refusing a patent were not applicable, separately or altogether, to his invention, and would not be used for the same purpose; second, that the case did not come within any of the conditions of the seventh section of the act of congress of July the 4th, 1836 [5 Stat. 119], which authorize its rejection. Upon this state of the case, together with all the original papers, the appeal is brought before me; and on the day and place appointed for the hearing the appellant appeared by his counsel, and an examiner on the part of the office. A written argument was received from the appellant's counsel, to which no other reply was given.

The argument relies on the oath of the party himself as prima-facie evidence that he is the first and original inventor or discoverer of the said improvement for which he solicits a patent. It is contended that the commissioner sums up by admitting that *it does not appear that the precise combination* of parts for such a purpose had been used before. The applicant states more explicitly the combination of which his improvement forms a part; that it is composed of a back like the back of a book; of a series of narrow leaves bound into this back, which are each coated on one side with some material which, on the application of

moisture, will instantly soften and become sufficiently adhesive to join or cement to the coated margin a letter or other paper that may be applied to it—in other words, the cement, the marginal leaves, and the back, to bind them. These constitute a definite and precise combination of three things.

The peculiar excellence and advantage of this improved mode, in the facilities attending it, the saving of cost, and otherwise, make it of sufficient utility and benefit to business men and the public to comply with the requisite of the statute in that respect; and it is not, and cannot be, denied that in the combination with which it is connected it is certainly distinguishable from everything of the kind that ever was known before, and is new in that combination. Analogous use and small amount of invention seem to be the ground upon which the decision of the commissioner is placed. There is some reason to believe that the commissioner has in some measure misapprehended the rule of law on this subject, from the application which he has made of it to this case. The rule, as I understand it, is that a mere analogous use is not patentable: but where a new or improved manufacture is produced by new contrivances, combinations, or arrangements, a new principle may be constituted, and the application or practice of old things will of course be new also in the result. The usual test is whether the production of the article is as good in quality at a cheaper rate, or better in quality at the same rate, or with both these consequences partially combined; and so is the like principle in mechanism. It is true the combination appears to be simple and the invention not very great, but that is not a sufficient objection if the invention be not frivolous and foolish.

I do not think it will be necessary to refer to authorities for these principles, as I suppose the mention of the principles will be enough to bring them to the recollection of the learned commissioner. One only will I refer to, to be found in Park v. Little [Case No. 10,715]. In that case the patent was for the application of bells to fire-engines, to be rung by the motion of the carriage, for the purpose of alarms or notice, instead of manual action. Here there was the use of old things; and the arrangement or contrivance, the invention which was determined to be patentable, consisted in the modus operandi —the motion of the engine instead of direct manual action. It was thought also sufficiently useful. I cite this case for the principle of it. In this case the whole preparation is ready as soon as it leaves the hands of the manufacturer, at much less expense, and very beneficial to the public as an article of trade, especially to business men.

I am therefore of opinion that the commissioner erred in refusing to grant the patent in this case, and that the said decision ought to be, and is hereby, reversed.